### In re CERTAIN LAND IN LAWRENCE.

(District Court, D. Massachusetts. October 22, 1902.)

#### No. 1,327

1. CONDEMNATION FOR POST OFFICE—LAND DEDICATED FOR A PARK—CONTEST—COMPENSATION.

   Under the laws and decisions of Massachusetts, governing in a proceeding by the United States to condemn land in that state for a post office, a city in which land has been dedicated for use of its inhabitants as a public park cannot have compensation therefor, it having no legal estate in the land; but it may contest the taking on the ground that the public use as a post office is not superior to the public use as a park.

---

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. § 219.

Henry P. Moulton, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

John P. Sweeney and John P. Kane, for city of Lawrence.

James R. Dunbar and Stimson & Stockton, for Essex Co.

LOWELL, District Judge. This is a proceeding to take land for a post office in Lawrence. The Essex Company once owned the land, and has never conveyed it by deed. The city of Lawrence has filed an intervening petition, which sets out:

"First. That said land was by the former owner thereof dedicated to the inhabitants of the said city of Lawrence for use as a public park; that said dedication was accepted, and said land has been so used and enjoyed by the public under said dedication for a period of forty years and upwards; and that the city of Lawrence is now the owner in fee of said land. Second. That said land has been used by the public as a public park, and also as a means of access by paths across the same, adversely, continuously, and uninterruptedly, for a period of more than twenty years, and that the city of Lawrence has acquired title to said land by prescription, or at least has acquired a prescriptive right of way across said land."

For the purposes of the case, it is assumed that the evidence would show an uninterrupted public user for more than 20 years, and would also show the designation of the land as a park upon plans made more than 20 years ago by the Essex Company. There was no other positive act by the company, and no formal act by the city government.

This land is condemned, not by virtue of any paramount authority of the United States, but by virtue of authority delegated to the United States by the commonwealth of Massachusetts. Const. U. S. art. 1, § 8; Rev. Laws Mass. c. 1, § 7; Burt v. Insurance Co., 106 Mass. 356, 8 Am. Rep. 339. It follows that these proceedings are governed by the laws of Massachusetts, and that the rights of the city to the land in question are determined by those laws. So far as applicable, the decisions of the Massachusetts supreme court control this court.

That a town may acquire a right of way by prescription was decided in Deerfield v. Railroad, 144 Mass. 325, 11 N. E. 105, and doubtless it may in appropriate case acquire a fee. See City of Boston v. Richardson, 105 Mass. 351, 357. But the cases cited show that rights thus acquired are altogether different from those asserted by the city of Lawrence in the case at bar. They are not public, but private to the city. See Green v. Inhabitants of Chelsea, 24 Pick. 71, 79. The interest of the city of Lawrence in the land in question, whatever it may be, is an interest for the use and benefit of the public, and not such a private interest as a municipality may have in real estate. Oliver v. City of Worcester, 102 Mass. 499, 3 Am. Rep. 485; Proprietors of Mt. Hope Cemetery v. City of Boston, 158 Mass. 509, 519, 33 N. E. 695, 35 Am. St. Rep. 515. A park is in that class of municipal property which includes highways and schoolhouses, not in the class which includes city halls. Counsel for the Essex Company has contended that property so held by the municipality is in the control of the state for the benefit of the public, and that, in the absence of express statute, the attorney general alone can maintain an action for the defense of the public rights. Attorney General v. Abbott, 154 Mass.

323, 28 N. E. 346, 13 L. R. A. 251. That case held, also, that the fee in land dedicated by an individual for a public park remains in the individual. It seems, then, that, whether the right to public use arises from dedication or prescription, there is no title in the municipality to easement or fee. "A town does not in such case own the land over which a way passes. Nor does it own the easement created by the construction of the way. That belongs to the public." Inhabitants of Cheshire v. Adams & C. Reservoir Co., 119 Mass. 356, 357.

But in some cases a municipality is permitted to maintain suit by virtue of its interest and of the interest of its inhabitants in property held for the public benefit. In Inhabitants of Springfield v. Connecticut River R. Co., 4 Cush. 63, a suit was maintained by a town to prevent interference by a railroad with a highway laid out in part by the county commissioners, and in part by the selectmen. The fee in the land was not in the town, and the use was public. In Easthampton v. County Com'rs, 154 Mass. 424, 28 N. E. 298, 13 L. R. A. 157, the town of Easthampton sought to prevent the county commissioners from laying out a highway over land belonging to the town, and used in connection with a schoolhouse. Whether the town of Easthampton had the fee in the land, or only an easement, does not appear. The court made no question that the town was a proper party to bring the suit, but held that the legislature had the right to provide that property taken for one public use should be applied to another, and that, in the absence of express statutory provision, the question whether it had done so or not was to be answered upon consideration of the relative importance and the necessities of the two uses, the extent of the harm to be done, and the circumstances of the particular case. Under the circumstances of the case before it, the supreme court held that the highway was validly laid out; but the opinion implies that, had the highway been laid out, not over the land used in connection with the schoolhouse, but through the schoolhouse itself, the decision might have been different. To the same effect is City of Boston v. Inhabitants of Brookline, 156 Mass. 172, 30 N. E. 611, where the city of Boston sought to prevent the town of Brookline from laying out a way over a strip of land in which the city of Boston had condemned, and paid for, an easement for the construction of a sewer. In the absence of express statutory provision, the question is one of reasonable interpretation of the legislature's general intent, as applied to the case before the court. If a municipality can thus maintain suit to prevent interference with property condemned for a public use, it can also maintain suit where the public use arises from dedication or prescription. While the cases cited decide or imply that the municipality can sometimes maintain suit to test the validity of a taking of land within its limits already devoted to one public use, yet they contain no implication that the municipality is ever to be compensated in money for the later taking. Thus, in Boston & A. R. Co. v. City of Boston, 140 Mass. 87, 89, 2 N. E. 943, speaking of highways and railroads, the court said, "The legislature has authority to grant either so as to interfere with a previous grant of the other, providing for compensation when private rights are impaired." In Inhabitants of Mill-

bury v. Blackstone Canal Co., 25 Mass. 473, no damages were allowed the town for interference with highways. See Inhabitants of Cheshire v. Adams & C. Reservoir Co., ubi supra; Browne v. Turner, 176 Mass. 9, 13, 56 N. E. 969. In Inhabitants of Millbury v. Blackstone Canal Co. and in Inhabitants of Cheshire v. Adams & C. Reservoir Co., where the plaintiff towns did not own the fee in the highways, it was intimated, indeed, that the result might have been different if the fee had been in the town. See, also, Prince v. Crocker, 166 Mass. 347, 362, 363, 44 N. E. 446, 32 L. R. A. 610. On the other hand, no compensation was allowed in Easthampton v. County Com'rs. Here it has been shown that the city of Lawrence has no legal estate in the land. Whatever may be the rule where the municipality has a legal estate, yet, in the want of such an estate, the municipality can intervene only to contest the taking, not to claim compensation for it. If the legislature authorizes the taking for one public use of land which is already subject to another public use, the land can be so taken without compensation. The legislature is the sufficient judge of the relative importance of the two uses. If there is no express legislative provision, the relative importance of the two uses is to be determined by the court. If the later use is deemed by the court, under all the circumstances, to be more important than the earlier, the land is taken for the later use without compensation for the loss of the earlier. If the earlier use is deemed the more important, the later is forbidden, and the earlier continues.

We come next to the application of these principles to the facts of this case. There is here no express provision of statute. I do not believe that the United States could, at its will, build this post office in the middle of the principal street of Lawrence, or across the main line of an important railroad. I do not think that the right of the public to prevent the first-mentioned taking can be vindicated only by the attorney general. I doubt if it can be laid down, without qualification, that the public use of a post office is in all places superior to the public use of a park. That it is so in the case at bar appears probable from what appeared incidentally at the argument, but the issue was not then raised, and cannot be determined without further hearing, if the city desires to be heard.