## East Deer Township School Dist. v. Van Dyke et al.

*J. M. McCandless, Charles Alvin Jones,* solicitor, *John J. O'Connell,* assistant solicitor, and *Snyder, Hull, Hull & Leiby,* for plaintiff.

*Charles J. Margiotti,* Attorney General, and *George W. Keitel,* Deputy Attorney General, for defendants.

HARGEST, P. J., October 14, 1937.—This matter comes before us upon bill, answers and testimony.

Plaintiff, a school district of the fourth class, is the owner of land fronting 125 feet on State highway route no. 70, upon which is erected a high school building which has been used for school purposes for 15 years and is valued at about $200,000. The Secretary of Highways, pursuant to statutory authority, is widening the highway and intends to take a portion of the school property for highway purposes. The County of Allegheny has agreed to clear the right of way and has taken proceedings to that end. The bill avers that none of the defendants has any right to take any portion of the property which is now used for school purposes, the taking of which will interfere with such use and cause the school district irreparable loss and damage for which it has no adequate remedy at law. The bill prays for an injunction.

Defendants filed separate answers generally admitting the material averments of the bill but denying that the portion of the property taken will injure the use of the property for school purposes and averring that the use for highway purposes is a use superior to the public use to which the property has heretofore been appropriated, and that there is an adequate remedy at law.

### Discussion

Section 8 of the Highway Act of May 31, 1911, P. L. 468, 36 PS §61, as variously amended, provides that the Secretary of Highways may change the course and direction of State highways and the width thereof, and section 16 of the said act, as amended (36 PS §171), provides for the payment of damages where a change in the width of the existing lines is necessary.

Plaintiff contends: (*a*) That there is an irreparable injury; (*b*) that the property having already been devoted to a public use it cannot be taken and reappropriated to an entirely different public use.

Defendant, Secretary of Highways, contends that there is no constitutional right in plaintiff to recover damages for the taking of its property and that the principle that property once devoted to public use cannot be taken for a different public use does not apply where the State itself directly takes the property from one of its subordinate sovereignties.

There is no doubt that in the original grants of land six free acres were given along with every 100 acres purchased, for the express purpose of laying out roads where necessary, and that such additional grant was intended to take the place of compensation when such roads were laid out: McClenachan v. Curwin, 3 Yeates 362, 373; Commonwealth v. Fisher et al., 1 P. & W. 462, 464. And it is settled that compensation is a matter of grace and not of right: Snively v. Washington Twp., 218 Pa. 249, 254; Herrington's Petition, 266 Pa. 88, 91; Falkner v. Winfield Twp., 12 D. & C. 23.

It is not necessary, however, to decide this question. It would be properly decided in a proceeding for damages but not in a proceeding for an injunction.

This case presents no question of irreparable injury. Even if the whole building were taken the damages would be susceptible of measurement and therefore compensation could be arrived at if plaintiff is entitled thereto. Certainly, therefore, damages for the taking of a strip of ground in front of a building are also susceptible for ascertainment.

The other proposition that the property, having been once devoted to public use, cannot now be taken for another and inconsistent public use, raises an interesting question which is new in Pennsylvania. There is no doubt of the general proposition stated in 20 C. J. 602, §90:

"Property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by neces-

sary implication, mere general authority to exercise the power of eminent domain being in such case insufficient".

See Groff's Appeal, 128 Pa. 621, 632, South Western State Normal School's Case, 213 Pa. 244, Scranton Gas & Water Co. v. Delaware, Lackawanna & Western R. R. Co., 225 Pa. 152, Edgewood Borough Petition, 318 Pa. 268, and Beaver Borough v. Cleveland & Pittsburgh R. R. Co., 7 D. & C. 157.

Has the Secretary of Highways authority to take, assuming that the taking will materially impair or interfere with, and is inconsistent with, the public use already existing?

In our opinion the Secretary of Highways, when performing the duties imposed upon him by what is commonly known as the Sproul Highway Act and its amendments, is acting as the direct agent of the State. When the State itself, acting through the Secretary of Highways, is taking land under the right of eminent domain, for highway purposes, the situation differs from a taking by a city, borough, or school district, which is a subordinate sovereignty of the State. There is no case in Pennsylvania sustaining the proposition just made but we think it is supported by abundant authority elsewhere.

In United States v. City of Tiffin et al., 190 Fed. 279, the proceeding was to condemn a portion of a public alley for a post office site. In that case the court said (p. 280) :

"The whole contention, and the only question argued, is that neither an act of Congress nor an act of the Legislature has expressly authorized the condemnation of this plot of ground already dedicated to public use, and the only proposition offered in support of the demurrer is the rule that land in public use cannot be taken for another and inconsistent public use under general legislative power of condemnation, but the right must appear, to seize this particular property, by express provision directed toward the special property, in some pertinent legislation or be the inevitable implication arising from

such special legislation. This rule is established and the numerous authorities which support it are collated in a note on page 614 of 15 Cyc. The attempt to apply the rule, however, in this case ignores the difference in status between the United States in its relation to lands sought to be devoted to public use and the parties attempting to condemn in the cases giving rise to the rule.

"The United States has paramount authority in the matter of taking any property within its borders for those public uses which are within the constitutional reservations to the general government. Its rights in this behalf are inherent in its sovereignty, and are prior to constitutions and statutes. The Constitution does not operate to create this right, but only to limit its exercise to certain objects. The several states for their own administrative purposes within their own borders hold authority of the same generally broad and extraconstitutional nature. The principle of strict construction of either the nature or extent of this right applies to neither sovereignty for the reason that such right is a very part of the sovereignty itself, existing from the beginning. This does not mean, however, that no power may intervene to prevent arbitrary action, for such power certainly abides with the courts."

To the same effect are United States v. Jotham Bixby Co., 55 F.(2d) 317, C. M. Patten & Co. v. United States, 61 F.(2d) 970, and United States v. Southern Power Co., 31 F.(2d) 852.

The sovereignty over the lands of the State was originally more in the State than in the United States. The United States only acquired such as the States conceded to it. All other sovereignty remained in the State and therefore, if the doctrine heretofore stated that one subordinate sovereignty cannot take from another subordinate sovereignty without specific legislative grant property which has been applied to a prior public use has no application to the United States it certainly has none to the State when acting in its sovereign capacity.

In State Highway Comm. v. City of Elizabeth, 140 Atl. 335, the commission, acting for and in the name of the State, sought to enjoin the defendant from interfering with the building of a State highway route. The State Highway Commissioner endeavored to take land of the city. The statute in that case did not specify the course of the exact route. That matter was left to the discretion of the commission just as under our statute the Secretary of Highways may change the exact location of any road. In the case cited the commission laid out the road so that it was necessary to take certain lands owned in fee by the city. The court said (p. 337):

"As to the objection that the property in question is already devoted to a public use, if this be a fact, it is not controlling. While undoubtedly the doctrine of prior public use is applicable as between corporations having equal right of eminent domain under grant from the State, it has no application as between the State and one of its political subdivisions. This is because the State is the sovereign power. But, aside from this fact, I am convinced that the State Highway Act confers complete power on the commission to acquire the lands here involved by the method proposed."

In the case of In re Elimination of Highway-Railroad Crossing, etc., 234 App. Div. 129, 131, 254 N. Y. Supp. 578, the railroad appealed from the orders of the Public Service Commission. The court, referring to the rule that property previously devoted to public use by one corporation having the power of eminent domain cannot be taken by another corporation unless by express legislative authority, said:

"But this rule has no application where the taking is by the sovereign. The rights to retake are inherent in its sovereignty and are prior to constitutions and statutes [citing cases]."

See also Washington County v. Board of Mississippi Levee Commrs., 171 Miss. 80, 156 So. 872.

In the case of Adirondack Ry. Co. v. New York State, 160 N. Y. 225, and 176 U. S. 335, the Adirondack Park Act provided that the Forest Preserve Board may take possession of any lands within the territory of the Adirondack Park by proper proceedings. It attempted to take the property of the Adirondack Railway Company which had been laid out for the construction of a railroad but no railroad was actually built thereon. The Court of Appeals sustained the right to take. The Supreme Court of the United States sustained the Court of Appeals, saying, inter alia, at page 349:

"It is true that the State may delegate the power, and where it has done so to a railroad corporation and by its exercise lands have been subjected to a public use, they cannot be applied to another public use without specific authority, expressed or imperatively implied, to that effect. But the sovereign power of the State cannot be alienated, and where exercised is exclusive."

From the foregoing authorities we are of opinion that the State, when authorized by the legislature so to do, acting directly through some agency created for the purpose, may take, under proper proceedings and for adequate compensation, if legally recoverable, property which has been theretofore applied by one of its subordinate agencies to public purposes, if the taking is in the furtherance of the governmental functions of the State. The building of roads is such a governmental function and therefore it follows that the taking in this instance, being for such purpose and being authorized by the statute, is a valid exercise of the power of the State. It further follows that the bill must be dismissed.

### Decree nisi

Now, October 14, 1937, the bill of complaint is hereby dismissed at the cost of plaintiff.